Stuart Plunkett (State Bar No. 187971)
Kathryn Christopherson (State Bar No. 322289)
ALSTON & BIRD LLP
560 Mission Street, Suite 2100
San Francisco, CA 94105
Telephone: (415) 243-1000
Facsimile: (415) 243-1001
stuart.plunkett@alston.com
kathryn.christopherson@alston.com

Attorneys for Defendant
T-MOBILE USA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VAGISH SHANMUKH, individually and on behalf of classes of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC.,<br><br>Defendant. | Case No.: 3:21-cv-7581<br><br>(Alameda County Court Case No. RG21111118)<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION**<br><br>Complaint filed in state court:<br>August 27, 2021 |

# NOTICE OF REMOVAL

In accordance with 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant T-Mobile USA, Inc. removes the case captioned *Vagish Shanmukh v. T-Mobile USA, Inc.*, Case No. RG21111118 from the Superior Court of Alameda County to the United States District Court for the Northern District of California. T-Mobile provides the following "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a); *see also Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87, 89 (2014).

1. On August 27, 2021, Plaintiff Vagish Shanmukh filed a putative class-action complaint—attached as Exhibit A—in Alameda County Superior Court. Plaintiff alleges claims under two state statutes—the California Consumer Privacy Act (CCPA) and the California Unfair Competition Law (UCL)—and alleges claims for negligence, negligence *per se*, unjust enrichment, breach of confidence, and declaratory and injunctive relief. Ex. A, Compl. pp. 19–33.

2. This Court has original jurisdiction over this case under the Class Action Fairness Act (CAFA) because (1) there is at least minimal diversity between the parties, (2) the putative class includes more than 100 members, (3) no defendant is a state, state official, or other governmental entity, (4) the amount in controversy exceeds $5 million, exclusive of interest and costs, and (5) none of CAFA's exceptions applies. *See* 28 U.S.C. § 1332(d). T-Mobile has also complied with all other removal requirements.

## BACKGROUND

3. Plaintiff alleges that he is a T-Mobile customer. Ex. A, Compl. ¶ 16. According to Plaintiff, in mid-August 2021, a third-party criminal actor illegally accessed T-Mobile's systems containing personally identifiable information (PII) for millions of T-Mobile's customers, including Plaintiff. *Id.* ¶¶ 2, 6. Plaintiff alleges eight claims and seeks compensatory damages, punitive damages, statutory penalties, injunctive and declaratory relief (including an order requiring T-Mobile to give every putative class member "free credit monitoring and identity theft protection"), restitution, and attorneys' fees. *See id.* pp. 33–34. He alleges those claims on his own behalf and on behalf of two putative classes—a "Nationwide Class" consisting of "[a]ll U.S. residents whose data

was exfiltrated in the Data Breach," and a "California Class" consisting of "[a]ll California residents whose data was exfiltrated in the Data Breach." *Id.* ¶ 71.

4. Plaintiff filed his complaint on August 27, 2021 and served T-Mobile on September 1, 2021. *See* Ex. A, Compl. p.1.; *see also id.* at 39 (proof of service). In accordance with 28 U.S.C. § 1446(a), T-Mobile has attached as Exhibit A true and correct copies of the summons, complaint, civil cover sheet, and notice of related cases, which is the only process, pleading, or order that Plaintiff served on T-Mobile in the state-court case. T-Mobile has also attached a copy of the state-court docket (Exhibit B) and a copy of all other process, pleadings, and orders filed in the state-court case (Exhibit C).

## GROUNDS FOR REMOVAL

5. The Court has original subject-matter jurisdiction under CAFA because of the case's size, the amount of damages Plaintiff's complaint puts in controversy, and the parties' diversity. CAFA provides that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2). Section 1332(d)(5) also provides that CAFA jurisdiction extends to class actions in which there are at least 100 putative class members. *See id.* § 1332(d)(5)(B). This case satisfies those requirements.

### I. THIS CASE IS A CLASS ACTION WITH MORE THAN 100 PUTATIVE CLASS MEMBERS.

6. Under CAFA, a "class action" is "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). According to Plaintiff, he filed the complaint "on behalf of himself and all others similarly situated pursuant to Cal. Code of Civ. P. § 382," and he alleges that he represents a "Nationwide Class" and a "California Class." Ex. A, Compl. ¶ 71. That fits CAFA's definition of a putative class action. *See* 28 U.S.C. § 1332(d)(1)(B).

7. Plaintiff alleges that "the Nationwide Class consists of between 50 and 100 million customers whose data was compromised in the Data Breach, and the California Class consists of millions of customers whose data was compromised in the Data Breach." Ex. A, Compl. ¶ 74; *see also id.* ¶ 17 (alleging that "Defendant collects and maintains the personal information of millions of U.S. and California consumers"). Therefore, based on Plaintiff's own allegations, there are more than 100 putative class members in both classes, which satisfies CAFA's requirement that the putative class include more than 100 members.

## II. THERE IS MORE THAN $5 MILLION IN CONTROVERSY.

8. The "matter in controversy" also exceeds $5 million, exclusive of interest and costs. *Cf.* 28 U.S.C. § 1332(d)(2). "[T]he amount in controversy is the *amount at stake* in the underlying litigation." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020) (citation omitted, emphasis in original). The "amount at stake" does "not mean likely or probable liability; rather, it refers to possible liability." *Id.*; *see also Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018) ("amount at stake" includes "any result of the litigation, excluding interests and costs, that entails a payment by the defendant").

9. The complaint does not state an amount in controversy, so this notice must contain only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89; *see also Greene*, 965 F.3d at 772; *Ehrman v. Cox Communs., Inc.*, 932 F.3d 1223, 1227–1228 (9th Cir. 2019) (district court should not place on removing party "a burden to prove its jurisdictional allegations in response to [a] facial challenge"); *Porras v. Sprouts Farmers Mkt., LLC*, No. EDCV 16-1005 JGB (KKx), 2016 U.S. Dist. LEXIS 96805, at *3 (C.D. Cal. July 25, 2016) ("Evidence establishing the amount in controversy is only required when the plaintiff contests, or the court questions, the defendant's allegation.").

10. T-Mobile denies all liability on Plaintiff's claims, denies that Plaintiff could ever recover damages, and denies that a court could ever certify a class under Federal Rule of Civil Procedure 23. But accepting Plaintiff's allegations are true—for removal purposes only—his putative class claims put more than $5 million, exclusive of interest and costs, in controversy.

Plaintiff alleges that the putative Nationwide Class includes between 50 and 100 million members (Ex. A, Compl. ¶ 74), and he seeks compensatory damages, punitive damages, statutory and civil penalties, injunctive relief, declaratory relief, restitution, and attorneys' fees for all those putative class members. *See, e.g.*, Ex. A, Compl. p. 33; *id.* ¶ 68 (describing types of alleged injuries); *see also id.* ¶¶ 95, 97 (same). If we assume for purposes of removal that there are 50 million putative class members, then so long as Plaintiff is seeking to recover at least 20 cents in damages per each putative class member, the amount in controversy is $10 million.[1] The complaint makes it clear that Plaintiff seeks far more than 20 cents per putative class member.

11. To take one example, Plaintiff alleges that T-Mobile should pay for credit-monitoring services beyond the two years' worth of services that T-Mobile has already offered to impacted customers. Ex. A, Compl. ¶ 69, p. 34; *see also, e.g.*, *Porras*, 2016 U.S. Dist. LEXIS 96805, at *7–9 (cost of providing credit-monitoring services is properly included in amount in controversy). Plaintiff does not say how long those services should last, but based on Plaintiff's allegation that there are 50 million putative class members (which is the low-end number of putative class members alleged in the Complaint), and assuming that Plaintiff seeks only one more year of credit-monitoring services for those members and that those services cost only $.20 per year (i.e., less than 2 cents per month), then the amount in controversy would still be $10 million, exclusive of interest and costs. *Cf. e,g.*, *Porras*, 2016 U.S. Dist. LEXIS 96805, at *8 ("not unreasonable" to use four years as an estimate for purposes of amount in controversy). Indeed, the monthly advertised rates for credit-monitoring services for the three national credit-monitoring bureaus range between $9.95 and 19.95 per month (Equifax), $9.99 and $19.99 per month (Experian), and $24.95 per month (TransUnion). *See* Equifax, https://www.equifax.com/personal/ (last visited Sept. 28, 2021); Experian, https://www.experian.com/consumer-products/compare-identity-theft-products.html (last visited Sept. 28, 2021); TransUnion, https://www.transunion.com/credit-monitoring (last visited Sept. 28, 2021). Plaintiff's claim for credit-monitoring services alone puts more than $5 million, exclusive of interest and costs, at stake.

---

[1] 50 million (putative class members) multiplied by .20 (twenty cents) equals $10 million.

12.     And that is only one type of claimed relief. Plaintiff also raises a CCPA claim on behalf of the putative California Class and alleges that he will amend his complaint to seek statutory damages. Ex. A, Compl. ¶ 85. The CCPA authorizes statutory damages of between $100 and $750 (Cal. Civ. Code § 1798.150(a)(1)(A)). Plaintiff alleges that the putative class includes millions of California citizens (Ex. A, Compl. ¶ 71(b)).  Thus, the forthcoming request for statutory damages on behalf of the putative class necessarily puts far more than $5 million in controversy.  Indeed, even if there were only 50,000 putative class members in the California Class, that would put $5 million at stake, exclusive of interest and costs. On top of that, Plaintiff also seeks (i) restitution or disgorgement of "the value to Defendant of the PII that was stolen in the Data Breach," "the profits Defendant is receiving from the use of that information," and "the amount that T-Mobile [allegedly] overcharged Plaintiff and Class members for use of its services" (which could potentially amount to millions of dollars under Plaintiff's theory); (ii) attorneys' fees (which could likewise amount to millions of dollars for complex class-action litigation); (iii) injunctive relief requiring T-Mobile to implement more security measures; and (iv) other types of injunctive and declaratory relief. Ex. A, Compl. ¶¶ 97, 127, p. 34. Those requests also increase the amount in controversy beyond the threshold. *Cf. Dart Cherokee*, 574 U.S. at 89 (notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold").

13.     Since mid-August 2021, other plaintiffs have also filed putative class actions against T-Mobile in federal court concerning the same set of facts. Many of those plaintiffs have invoked the courts' jurisdiction under CAFA, representing that the amount in controversy for those cases exceeds $5 million, exclusive of interest and costs. *See, e.g.*, Dkt. 1, Compl. ¶ 13, *Veera Daruwalla v. T-Mobile USA, Inc.*, Case No. 2:21-cv-01118 (W.D. Wash. Aug. 19, 2021) ("This Court has jurisdiction over this action under the Class Action Fairness Act ('CAFA'), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs"); Dkt. 1, Compl. ¶ 11, *Randall Norris vs. T-Mobile USA, Inc.*, Case No. 2:21-cv-01153-JLR (W.D. Wash. Aug. 26, 2021) (same); Dkt. 1, Compl. ¶ 25, *Akins v. T-Mobile USA, Inc.*, Case No. 2:21-cv-01179 (W.D. Wash. Aug. 31, 2021) (same). The same is true here. Indeed, Plaintiff's counsel also

represent plaintiffs in the *Daruwalla* case—a case pending in federal court in which the plaintiffs allege that more than $5 million is at stake and have moved to consolidate all federal proceedings in an MDL.

### III. MINIMAL DIVERSITY EXISTS.

14. There is also minimal diversity under CAFA because at least one plaintiff is a citizen of a different state than one defendant. *See* 28 U.S.C. § 1332(d)(2)(a).

15. Plaintiff is a citizen of California. *See* Ex. A, Compl. ¶ 16.

16. T-Mobile is incorporated in Delaware and has its principal place of business in Washington (*id.* ¶ 17), so it is a citizen of Delaware and Washington.[2] *See Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010); *see also* 28 U.S.C. § 1332(c)(1) (for diversity purposes, a corporation "shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . .").

17. Because at least one member of the putative class (Plaintiff) is a citizen of California, and because T-Mobile is a citizen of Delaware and Washington, CAFA's minimal-diversity requirement is met.[3]

### IV. T-MOBILE HAS SATISFIED ALL OTHER REQUIREMENTS.

18. T-Mobile has also satisfied all other requirements for removal under 28 U.S.C. § 1446.

19. *Venue*. Venue is proper because Plaintiff filed the complaint in Alameda County and because this Court sits in the federal judicial district embracing that county. *See* 28 U.S.C. §§ 1391, 1441(a), 1446(a); *id.* § 84(a).

20. *Timeliness.* T-Mobile was served with the summons and complaint on September 1, 2021. T-Mobile has filed this notice within 30 days of being served with the summons and complaint, so this notice is timely under 28 U.S.C. § 1446(b)'s 30-day deadline.

---

[2] T-Mobile is not a governmental entity. *Cf.* 28 U.S.C. § 1332(d)(5).

[3] None of the exceptions to CAFA applies here, but in any event, the burden is on Plaintiff to prove that one of CAFA's exception applies. *See Breuer v. Jim's Concrete of Brevard, Inc.,* 538 U.S. 691, 698 (2003).

21. ***Notice to adverse parties and state court.*** In accordance with 28 U.S.C. § 1446(d), T-Mobile will promptly serve copies of this notice on Plaintiff's counsel and will file the notice with the clerk for the Alameda County Superior Court.

22. ***Consent.*** T-Mobile is the only defendant. Moreover, under CAFA, a class action "may be removed by any defendant without the consent of all defendants." 28 U.S.C. § 1453(b).

23. ***Other matters.*** If Plaintiff opposes removal, then T-Mobile asks for the opportunity to submit briefing, argument, and additional evidence to show why removal is proper. T-Mobile also reserves the right to amend or supplement this notice. By filing this notice, T-Mobile does not waive or relinquish its right to assert any defense or objection to the complaint.

## CONCLUSION

The Court has subject-matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332, and removal is proper under 28 U.S.C. §§ 1441, 1446, and 1453.

Dated: September 28, 2021

Stuart Plunkett (State Bar No. 187971)
Kathryn Christopherson (State Bar No. 322289)
**ALSTON & BIRD LLP**
560 Mission Street, Suite 2100
San Francisco, CA 94105
Telephone: (415) 243-1000
Facsimile: (415) 243-1001
stuart.plunkett@alston.com
kathryn.christopherson@alston.com

By: */s/ Stuart Plunkett*
    Stuart Plunkett

Attorneys for Defendant T-Mobile USA, Inc.